**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Bridget Green,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**District of Columbia,**<br><br>**Defendant.** | ) | **Civil No. 14-cv-00966 (APM)** |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Plaintiff Bridget Green, acting on behalf of her minor child, E.A., brought this action seeking an award of attorneys' fees and costs arising from an administrative proceeding brought on E.A.'s behalf under the Individuals with Disabilities Education Act. Plaintiff contends that she is entitled to $53,385.52 in fees and costs because she prevailed in the administrative proceedings. Defendant District of Columbia counters that Plaintiff is entitled to some but not all of the fees and costs requested because she did not prevail on all claims asserted. The District of Columbia also urges reduction of the award because (1) the proposed hourly rate for calculating fees is excessive and (2) some of the submitted fees and costs are unreasonable. Before the court are Plaintiff's and Defendant's respective Cross-Motions for Summary Judgment. After considering the parties' submissions and the relevant law, the court grants in part and denies in part both motions and awards attorneys' fees and costs to Plaintiff in the amount of $32,934.71.

## II. BACKGROUND

### A. Factual Background

At all times relevant to this action, Plaintiff's child, E.A., was a student in the District of Columbia's public school system. On May 21, 2013, the District of Columbia Public Schools ("DCPS") convened a meeting to develop an Individualized Education Program ("IEP") for E.A. *See* Hearing Officer Determination, ECF No. 9-5 at 7 [hereinafter HOD]. An IEP, as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, is "a written statement for each child with a disability" that includes "the child's present levels of academic achievement and functional performance" and sets forth the "services" and "accommodations" to be provided to the child, *id.* § 1404(14). In advance of E.A.'s IEP meeting, he was evaluated both by "independent professionals" who worked with him at his daycare facility and by "DCPS's eligibility team members" whose only contact with E.A. was for diagnostic purposes. *See* HOD at 4; *see also id.* 5-7. The resulting IEP (the "Initial IEP") required DCPS to provide E.A. with five hours per week of "Specialized Instruction" in a general education setting and two hours per month of both "Occupational Therapy" and "Speech-Language Pathology" outside of a general education setting. Initial IEP, ECF No. 19-1 at 8. The Initial IEP concluded that E.A. had a "developmental delay" but "rejected the disability classification of autism spectrum disorder" advanced by Plaintiff, HOD at 7, and expressly declined to provide E.A. with a "dedicated aide," Initial IEP at 8. Thereafter, E.A. was assigned to a general education classroom at a DCPS school. *See* HOD at 7.

Dissatisfied with the Initial IEP, Plaintiff hired counsel and on September 12, 2013, filed an administrative due process complaint against DCPS alleging that the Initial IEP denied E.A. the "free appropriate public education" ("FAPE") to which he is entitled under the IDEA. 20 U.S.C. § 1400(d)(1)(A); *see also* Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J., ECF No. 9-

4 at 2 [hereinafter Pl's Mot.]. Specifically, the complaint alleged that the Initial IEP (1) failed to "offer appropriate related services in the areas of occupational therapy [], speech/language and behavioral support and a 1-to-1-aide, and fail[ed] to offer appropriate specialized instruction and individualized classroom support/accommodations"; (2) improperly classified E.A. "as developmentally delayed instead of autistic"; (3) failed "to offer placement in a full-time program that provides full-time special education services in a small class setting with specially trained teachers"; and (4) failed "to take into account the conclusions, recommendations and other information in [E.A.]'s independent evaluations . . . ." HOD at 1; *see also* Def.'s Stmt. of Undisputed Material Facts, ECF No. 11-2 at ¶ 3 [hereinafter Def.'s Stmt. of Facts]; Def.'s Cross-Mot. for Summ. J. and Opp'n to Pl.'s Mot. for Summ. J., ECF No. 11-1 at 2 [hereinafter Def.'s Mot.]. Plaintiff requested six remedies that collectively, she alleged, would guarantee E.A. a FAPE. HOD at 2; *see also* Def.'s Stmt. of Facts ¶ 4.

DCPS held E.A.'s due process hearing on November 5-6, 2013, during which Plaintiff and E.A. were represented by counsel. Def.'s Stmt. of Facts at ¶ 6; *see also* HOD at 2. The hearing officer issued her "determination" on November 17, 2013. Def.'s Stmt. of Facts at ¶ 7; *see also generally* HOD. In it, the hearing officer framed the issues before her as follows:

1. Did DCPS develop an inappropriate IEP in May 2013?
2. Did DCPS deny Student a FAPE by failing to offer placement in a full-time program that offers full-time special education services in a small class setting with specially trained teachers because the proposed DCPS school is inappropriate?
3. Did DCPS deny Student a FAPE by failing to take into account recommendations and other information in Student's independent evaluation?

HOD at 3.[1]

[1] Plaintiff "withdrew" what was initially her second claim, *see* Def.'s Stmt. of Facts ¶ 6—that E.A. was inappropriately classified "as developmentally delayed instead of autistic"—after the hearing officer advised her that it "should be merged with [her first claim—the appropriateness of the IEP]," HOD at 1. Defendant argues that, in evaluating

As to the first issue, the hearing officer determined "that DCPS denied [E.A.] a FAPE by failing to comply with the procedures set forth in IDEA regarding initial evaluations." HOD at 8. These procedural deficiencies, the hearing officer found, prevented her from making a final judgment about the appropriateness of the Initial IEP. *Id.* ("[T]he hearing officer cannot confirm that the IEP is reasonably calculated to provide Student with educational benefits."). The hearing officer similarly found that she could not make a final determination about the second issue—the appropriateness of E.A.'s school placement. *Id.* at 9 ("As the appropriateness of a student's assigned location of services turns on whether the location can implement an appropriate IEP for a given student, the hearing officer concludes that the existing evidence is insufficient to allow a determination of the appropriateness of Student's assigned location of services for SY 2013/14."). With the aim of resolving the first two issues, the hearing officer ordered DCPS to administer additional evaluations to E.A. and to convene a meeting to revise the Initial IEP and alter E.A.'s school placement as appropriate. *Id.* at 10. As to the third issue, the hearing officer concluded that Plaintiff "failed to meet its burden of proof," *id.* at 9, and denied and dismissed with prejudice Plaintiff's claim that DCPS failed to adequately consider E.A.'s independent evaluations, *id.* at 10.

DCPS conducted additional evaluations of E.A., as ordered by the hearing officer. *See* Parties' Joint Resp. to Court's Order of Feb. 11, 2015, ECF No. 18 at 1-2, 4 [hereinafter Parties' Joint Resp.]. On January 16, 2014, and February 13, 2014, DCPS convened meetings for the purpose of revising, as appropriate, the Initial IEP. *Id.* These meetings produced a revised IEP, issued on February 16, 2014 (the "Revised IEP"), which differed in several ways from the

---

Plaintiff's success in the administrative proceeding, the court should treat Plaintiff as having advanced four claims instead of the three that the hearing officer identified. *See, e.g.*, Def.'s Mot. at 1 ("Four issues were certified for hearing."); *id.* at 13 ("Plaintiff was successful on only one out of the four issues certified for the hearing[.]"). However, for purposes of its analysis, the court will focus on the three claims as defined by the hearing officer and will not treat the fourth "withdrawn" claim as an unsuccessful claim, because it was "merged" with another claim upon suggestion of the hearing officer.

Initial IEP. *See id.* at 2-5. E.A.'s "Occupational Therapy" treatment increased from two to three hours per month; his "Speech-Language Pathology" treatment increased from two to four hours per month; and his "Behavioral Support Services" increased from zero to two hours per month. *Id.* at 2; Revised IEP, ECF No. 19-2 at 11. The Revised IEP did not, however, alter E.A.'s school placement, which remained "a large general education classroom with approximately 17-18 students," Parties' Joint Resp. at 3; nor did it reclassify E.A. as autistic, *id.* at 3, 5.

### B. Procedural History

On May 5, 2015, Plaintiff submitted to DCPS an application requesting payment of $53,385.52 in attorneys' fees and costs arising from the representation of E.A. Compl., ECF No. 1 ¶ 5. Plaintiff received no response to her application and, on June 6, 2014, filed a complaint with this court asking that it award her the full amount requested. *Id.* ¶ B. On July 30, 2014, Plaintiff moved for Summary Judgment, and on September 12, 2014, Defendant did the same. *See generally* Pl.'s Mot.; Def.'s Mot. Thereafter, at the request of the court, *see* Order, ECF No. 16, the parties jointly submitted supplemental information about DCPS' implementation of the HOD and the contents of the Revised IEP, *see* Parties' Joint Resp. Defendant also submitted redacted versions of both the Initial and the Revised IEP. *See* Notice of Filing of Redacted Docs., ECF No. 19.

## III. LEGAL STANDARD

### A. Cross-Motions for Summary Judgment

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where parties file cross-motions for summary judgment, "neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989) (citation omitted) (internal quotation marks omitted). "[E]ach [party] must carry its own burden under the applicable legal standard." *Ehrman v. United States*, 429 F. Supp. 2d 61, 67 (D.D.C. 2006) (citation omitted). If a party "has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof," the other party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 317-18 (1986).

**B. The IDEA**

The IDEA was enacted "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). A FAPE requires that each child with a disability receive "special education and related services that" are "provided at public expense" and "in conformity with the [child's IEP]." *Id*. § 1401(9). The IDEA permits an individual to file a due process complaint and participate in an administrative hearing should she believe that a school district is denying a student a FAPE. *Id.* §§ 1415(b)-(c).

A "court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party [in an administrative proceeding] who is the parent of a child with a disability." *Id.* § 1415(i)(3)(B)(i). In analyzing a request for attorneys' fees, a court must determine (1) "whether a party has prevailed and the extent to which it has prevailed," and (2) "whether the attorneys' fees being sought are reasonable." *A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 46

(D.D.C. 2012) (citation omitted); *see also Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010) ("A court's determination of the appropriate attorney's fees, in other words, is based on a two-step inquiry. First, the court must determine whether the party seeking attorney's fees is the prevailing party. . . . Second, the court must determine whether the attorney's fees sought are reasonable.") (citing 20 U.S.C. §1415(i)(3)(B)). Both inquiries—the degree to which Plaintiff prevailed and the determination of reasonableness—are at issue in this case.

## IV. ANALYSIS

The court turns first to the parties' dispute over whether the attorneys' fees sought should be reduced based on the extent to which Plaintiff prevailed at the administrative hearing. It then considers their disagreement over the applicable hourly rate. Finally, the court addresses Defendant's specific objections to certain time entries and claimed costs.

### A. Extent to Which Plaintiff Prevailed

#### *1. The "prevailing party" threshold*

A plaintiff must be a prevailing party to recover attorneys' fees under the IDEA. 20 U.S.C. § 1415(i)(3)(B). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-89 (1st Cir. 1978). This "generous" standard does not guarantee a plaintiff full fees—it "brings the plaintiff only across the statutory threshold." *Id.*

Here, Defendant concedes that Plaintiff surpassed the prevailing party threshold. Def.'s Mot. at 1. ("Defendant does not dispute that Plaintiff obtained some relief as a result of the hearing[.]"). Defendant argues, however, that Plaintiff is not entitled to the entirety of the requested fees because she "was denied the majority of the relief that she sought." *Id.* Defendant

contends that Plaintiff prevailed on only one issue—the appropriateness of the IEP—and was "denied the most significant portions of relief that she requested including immediate funding and placement for the student at an appropriate program proposed by Parent, with transportation and all related services, as well as compensatory education consisting of social skills training and academic tutoring." *Id.* at 12. Plaintiff counters that she "was the prevailing party and found to be entitled to specified special education services that DCPS had failed or refused to provide." Pl.'s Mot. 2. Plaintiff further argues that she "was successful on the core issue in the case. Success was achieved because the additional testing was ordered and a new IEP reflecting this had to be developed." Pl's Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Opp'n to Def.'s Cross-Mot. for Summ. J., ECF No. 12 at 5 [hereinafter Pl.'s Reply].

The court agrees with Defendant that Plaintiff prevailed only in part but finds that Plaintiff's success was nonetheless significant. In *Hensley v. Eckerhart,* the Supreme Court established a two-step inquiry to determine the attorneys' fees to be awarded to a partially successful plaintiff, emphasizing that the district court has substantial discretion in awarding such fees. *Hensley*, 461 U.S. at 437 ("We reemphasize that the district court has discretion in determining the amount of a fee award.");[2] *Goos v. Nat'l Ass'n of Realtors*, 997 F.2d 1565, 1571 (D.C. Cir. 1993) ("These equitable judgments are left to the discretion of the district court.") (citing *Hensley*, 461 U.S. at 436-37); *Nelson v. District of Columbia*, 967 F. Supp. 2d 360, 362 (D.D.C. 2013) (stating that "the first *Hensley* prong opens the door wide for discretion short of abuse").

[2] Although *Hensley* involved fee-shifting under 42 U.S.C. § 1988, the Court explicitly noted that the "standards set forth in [its] opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S. at 433 n.7. Courts in this circuit have consistently applied the two-step *Hensley* inquiry in IDEA cases. *See, e.g.*, *A.S.*, 842 F. Supp. 2d at 46-47; *B.R. v. District of Columbia*, 802 F. Supp. 2d 153, 163-65 (D.D.C. 2011).

*2. First* Hensley *inquiry*

The first inquiry under *Hensley* directs courts to consider whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." *Hensley*, 461 U.S. at 434. If a court determines that an unsuccessful claim is not related to a successful claim, it "must confine fee awards to work done on the successful claims" by "weeding out work done on unrelated unsuccessful claims from any award." *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992). If, however, "the plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories" and "[m]uch of counsel's time [is] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," courts should move to the second *Hensley* inquiry without reducing the fees sought by a plaintiff. *Hensley*, 461 U.S. at 435. Claims need not have a "complete factual overlap" in order to be related. *Goos*, 997 F.2d at 1570.

In this case, the three issues addressed by the hearing officer shared a common core of facts and were premised on similar legal theories—the development and issuance of the Initial IEP and the inadequacy of the Initial IEP—and were therefore related. The first issue focused on the substance of the Initial IEP, asking whether it, as a whole, was appropriate. HOD at 8. The second issue concerned the propriety of E.A.'s school placement, which the hearing officer declared depended on the appropriateness of the Initial IEP. *See id.* at 9 ("[T]he appropriateness of a student's assigned location of services turns on whether the location can implement an appropriate IEP for a given student[.]"). And the third issue, which focused on the process of developing the Initial IEP, *i.e.*, whether DCPS sufficiently considered E.A.'s independent evaluations, also clearly shared that same common core of facts. It is thus difficult to segregate the hours expended by

Plaintiff's counsel on the successful claims from the unsuccessful claims. The court will not reduce the attorney's fees sought under the first *Hensley* inquiry.

*3. Second* Hensley *inquiry*

The second inquiry under *Hensley* requires a court to analyze the "degree of success obtained" by a plaintiff. 461 U.S. at 436. "Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee." *Id.* at 435. Where "a plaintiff has achieved only partial or limited success . . . [t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37. "There is no precise rule or formula for making these determinations"; rather, the second inquiry under *Hensley* is an "equitable judgment" in which a "court necessarily has discretion." *Id.* at 437.

Here, the court finds that Plaintiff obtained a high degree of success for E.A., though not the "excellent results" that would warrant the full, undiminished award sought by Plaintiff. The administrative hearing addressed three related issues. Plaintiff sought a variety of different remedies. But at bottom, Plaintiff initiated the IDEA administrative hearing contending that DCPS had denied E.A. a FAPE and seeking to remedy that denial through additional testing and the revision of his IEP. The hearing officer determined that E.A. was, in fact, denied a FAPE and ordered DCPS to revise E.A.'s IEP as appropriate. DCPS revised the IEP by, among other adjustments, increasing the Occupational Therapy, Speech-Language Pathology, and Behavioral Support Services to be provided to E.A. These revisions demonstrate the inadequacy of the Initial IEP and Plaintiff's success as to the core of its litigation effort—improving E.A.'s IEP. Because Plaintiff achieved important improvements in E.A.'s IEP, the court does not believe it would be fair to award her 50 percent or less of her counsel's fees, as Defendant urges.

But Plaintiff fell short on two important fronts—a specialized school placement for E.A. and a diagnosis of autism, which presumably would have brought with it additional services. She also did not prevail on her claim that DCPS inadequately considered E.A.'s independent evaluations. A reduction of 35 percent, in the court's view, fairly reflects Plaintiff's overall success on E.A.'s behalf while recognizing the aspects of relief on which she did not prevail.

**B. Reasonable Hourly Rate**

The parties dispute the hourly rate on which to base the fee award. Plaintiff bears the burden of demonstrating the reasonableness of the hourly rate sought. *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995). She must support her proposed hourly rate with evidence "that the requested rates are in line with those prevailing in the community for similar lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). Such an hourly rate "is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate." *Id.*

Plaintiff argues that the prevailing hourly market rate in IDEA cases is $510 for attorneys with her counsel's years of experience and $145 for experienced paralegals. Pl.'s Mot. at 5-6. Plaintiff derived these rates from the *Laffey* Matrix. *See id.* at 6-9; *see Laffey* Matrix (2003-2014), ECF No. 9-10. The *Laffey* Matrix is a fee schedule maintained by the Civil Division of the United States Attorney's Office for the District of Columbia, "which sets out compensable billing rates for attorneys in the District of Columbia and has been adopted by the judges of this District in many cases." *Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 74 (D.D.C. 2011) (citation omitted). Plaintiff asserts that, because of her counsel's "extensive legal experience," which consists of "over 30 years" of practicing law, Pl.'s Mot. at 7, and the "complex" nature of the hearing at issue, *see id*. at 2-5, the full *Laffey* rates are appropriate. Defendant counters that,

because E.A.'s administrative proceeding "was not novel or complex," the court should reduce the *Laffey* rate by 25 percent. Def.'s Mot. at 11.

Although some courts in this district have applied a diminished *Laffey* rate in IDEA cases, *see, e.g.*, *Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 63 (D.D.C. 2011); *Agapito v. District of Columbia*, 525 F. Supp. 2d 150, 152-55 (D.D.C. 2007), this court sees no reason to do so here. Plaintiff's counsel has extensive experience practicing law in the District of Columbia and, in particular, litigating IDEA cases. *See* Decl. of Elizabeth T. Jester, Esq., ECF No. 9-2, ¶ 6 ("I have participated in hundreds of administrative due process hearings pursuant to IDEA and procured countless settlement agreements in IDEA cases in the District of Columbia."). Her paralegal has worked with Plaintiff's counsel for 19 years. *Id.* ¶ 14. And this case was not, as the District contends, uncomplicated. The administrative hearing at issue, which lasted for two days, involved testimony from nine witnesses—including five experts—and 22 exhibits—including various evaluations of E.A. Pl.'s Mot. at 3. The administrative hearing was preceded by a "lengthy prehearing conference." *Id.* Additionally, counsel's preparation for the hearing occurred over five months, and she expended additional time over three different months to prepare for the post-hearing IEP meeting. *See* Invoice, ECF No. 9-6. Courts in this district "ha[ve] rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation" and "reaffirm[ed] that IDEA cases are sufficiently complex to allow application of the *Laffey* Matrix." *Irving v. District of Columbia*, 815 F. Supp. 2d 119, 129 (D.D.C. 2011); *see also Jackson*, 696 F. Supp. 2d at 102 (applying the *Laffey* Matrix and stating that "numerous judges in this district have applied *Laffey* rates in the context of fee awards arising out of IDEA administrative proceedings") (citations omitted); *Young v. District of Columbia*, 893 F. Supp. 2d 125, 130-31 (D.D.C. 2012) (noting that courts in this district have not had "a unified approach to

the proper rates for attorneys' fees in IDEA cases" and "exercis[ing] . . . discretion to apply the rates that plaintiffs requested, which are equal to the *Laffey* Matrix rates"). The court applies the full *Laffey* rates here.

**C. Reduction of Specific Fees and Costs**

Defendant requests (1) a reduction of fees for specific tasks undertaken by Plaintiff's counsel, namely, (a) travel to hearings and meetings in the District of Columbia and (b) drafting the due process complaint, and (2) a reduction of certain administrative costs. The court finds a 50 percent reduction of fees for travel to be appropriate, but will not reduce the fees incurred for drafting the IDEA complaint or the administrative costs.

*1. Reduction of Fees*

a. Travel

Defendant asserts, and Plaintiff does not contest, that $5,433.46 of the fees and costs sought are attributable to travel by Plaintiff's counsel. *See* Def.'s Mot. at 14; *see also* Invoice at 6, 8, 9. "In this circuit, travel time generally is compensated at no more than half the attorney's appropriate hourly rate." *Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 15 (D.D.C. 2005) (citation omitted). Plaintiff concedes that a 50 percent rate reduction is proper for travel time. Pl.'s Reply at 7 ("[U]ndersigned counsel is willing to accept as reasonable in this case Defendant's proposal that compensation or travel time be at 50 percent of her hourly rate."). This court therefore will reduce the fees Plaintiff seeks for travel by 50 percent after applying the 35 percent reduction, which is applicable to all fees requested.

b. Due process complaint

Defendant asserts that the 7.4 hours spent by Plaintiff's counsel to draft and finalize the "Due Process Complaint Notice" was unreasonable.[3] Invoice at 5. Defendant argues that "[t]he amount billed to draft this Complaint was excessive and should be reduced accordingly; it is highly unlikely that it took nearly almost an entire business day to draft what is mostly a form complaint, and in any event, is only three pages in length." Def.'s Mot. at 15. In support of its assertion, Defendant cites a single case in which a court reduced by 50 percent the fees requested for 10.5 hours "to review both parties' disclosures and prepare for the due process hearing." *Id.* The court finds it reasonable that counsel would have spent a business day drafting and refining what would serve as the framework pleading for the administrative hearing. The court therefore declines to reduce the attorneys' fees sought for drafting the complaint.

*2. Reduction of administrative costs*

Defendant asserts that Plaintiff's counsel "billed an excessive amount for faxing and photocopying costs" and asks the court to limit reimbursement for such costs to $113.10. *Id.* The court finds that these costs, which Plaintiff's counsel has repeatedly "averred . . . are accurate," Pl.'s Reply at 11, are reasonable. The court will not further reduce Plaintiff's reimbursement for such costs; it will, however, reduce such costs by 35 percent, in line with the reduction made to the award of attorneys' fees.

[3] In its Reply brief, Defendant argues that Plaintiff's time entries of "2.7 hours reviewing records, 2 hours in 'phone consults' and 2.4 hours of 'correspondence,'" are also attributable to Plaintiff's drafting of the due process complaint. Def.'s Reply to Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J., ECF No. 14 at 5. "Taken together, that is 14.5 hours toward writing, again, what amounts to a three-page due process complaint. Accordingly, the entire 14.5 hours should be reduced by 50% because the number of hours billed are excessive and unreasonable." *Id.* The court's unchanged by Defendant's amended argument.

## V. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Plaintiff's and Defendant's respective Cross-Motions for Summary Judgment. Plaintiff is awarded $32,934.71 in attorneys' fees and costs under the IDEA. A separate Order accompanies this memorandum opinion.